IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Mary Witzel, *et al.*,<br><br>          Plaintiffs,<br><br>v.<br><br>Rene Arevalo Jr.,<br><br>          Defendant. | Civil No. 1:19-cv-1437-RDA-MSN |

**REPORT & RECOMMENDATION**

This matter comes before the Court on the motion for default judgment (Dkt. No. 19) of plaintiffs. Having reviewed the record and the pleadings, the undersigned Magistrate Judge recommends entering default judgment in plaintiffs' favor for the reasons that follow.

**I.   Procedural Background**

On November 12, 2019, plaintiffs filed the instant action against defendant Rene Arevalo, Jr. ("defendant") alleging that defendant falsely and maliciously defamed plaintiffs, and stalked plaintiff Witzel. Compl. (Dkt. No. 1) ¶¶ 49-65. A summons for the complaint was issued on November 12, 2019. (Dkt. No. 4). The summons and complaint were served on defendant on November 29, 2019. (Dkt. No. 5). An answer was due by December 20, 2019, and no answer was received from defendant. Therefore, on January 15, 2020, plaintiffs filed a request for entry of default. (Dkt. No. 6). On January 17, 2020, the Clerk of Court filed entry of default as to defendant Arevalo. (Dkt. No. 7). On February 21, 2020, plaintiffs filed a motion for default judgment, (Dkt. No. 9) as well as a memorandum in support of their motion for default judgment (Dkt. No. 10). A

hearing was set for March 6, 2020, at which no representative for the defendant appeared. (Dkt. No. 13).

## II. Factual Background

The following facts are established by the complaint, the memorandum in support of the motion for default judgment, and the affidavits attached to the memorandum in support of the motion for default judgment.

The three plaintiffs in this case are Mary Witzel, Hyung Gyu Sun, and the law firm of Dunlap Bennett & Ludwig PLLC ("DBL"). DBL is a law firm organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business in Vienna, Virginia. (Dkt. No. 1) at ¶ 7. Mary Witzel is an attorney who works for DBL, with more than five years of experience in trademark law. (Dkt. No. 1) at ¶ 5. Hyung Gyu Sun is also an attorney who works for DBL, who has over a year of experience in trademark law. *Id*. at ¶ 6. Defendant Arevalo is a resident of California, who engaged the services of DBL. *Id*. at ¶ 8.

Plaintiff DBL provides legal services, including representation of clients in trademark prosecutions before the United States Patent and Trademark Office ("USPTO"). *Id.* at ¶ 11. In April of 2018, defendant retained DBL for purposes of filing a trademark application with the USPTO. *Id*. at 12. Plaintiffs worked with Arevalo to file a trademark application for his proposed FROYOZOMBIE mark.

Beginning in the summer of 2019, communications between plaintiffs and defendant unexpectedly and rapidly deteriorated. On July 3, 2019, defendant sent a disjointed email to the Donald Trump campaign in which he accused plaintiff Witzel of failing to opt in to mediation on Arevalo's behalf in what appears to be an Equal Employment Opportunity Commission complaint. *Id*. ¶ 18. Defendant copied Witzel on this email. Witzel then sent defendant an email

reminding him that DBL had been retained for the sole purpose of prosecuting his trademark application. *Id*. Witzel received no response to this email. *Id*.

On September 10, 2019, Arevalo emailed Witzel a complaint he filed with California's Department of Fair Housing and Employment. *Id.* at ¶ 20. The complaint accused Sun and Witzel of negligence and defamation related to Arevalo's "copyright self-image." *Id.* At this point, DBL determined that it was no longer possible to represent Arevalo, since he was now an adverse party in the California action. *Id*. Therefore, on September 11, 2019, DBL withdrew from representation of Arevalo, after sending him his casefile and informing him of upcoming deadlines in his trademark action. *Id*.

Subsequently, defendant's accusations against plaintiffs only intensified. On September 12, 2019, defendant sent an email to USPTO officials and 20 attorneys at DBL accusing Witzel, Sun, and DBL of "[b]reach of contract negligence and premeditated intent to cause harm to death." In the email, Arevalo noted that he would be suing Witzel "for EEOC MAX TIME 5 WITH DFEH TIMES 5 FOR NEGLIGENCE AND PREMEDITATED ATTEMPTED MURDER SINCE I DID COMMIT SUICIDE TWICE THIS YEAR AND THE YEAR BEFORE BECAUSE OF HER NEGLIGENCE. PLEASE HELP AND THERE IS 911 CALLS REGARDING SUICIDE ATTEMPT. SO A QUINTILLION NOTHING LESS THAN 500 TRILLION TIMES 3 FROM DBL DUNLAP BENNETT & LUDWIG LAWFIRM FOR PUNITIVE DAMAGES AND FOR BREACH OF CONTRACT."[1] *Id*. at ¶ 23.

In September of 2019, Arevalo also published internet reviews of DBL stating that DBL breached its contract with defendant and stating "what can I say that won't end up in slander […] hmmmm enough said." *Id*. at ¶ 25. On September 28, 2019, defendant sent another copy of the

---

[1] Throughout this Report and Recommendation, the undersigned has retained defendant's original capitalization and punctuation in order to accurately convey the tenor of these statements.

complaint he filed against plaintiffs to the USPTO as an attachment to an email. *Id*. at ¶ 26. In another email on October 3, 2019, defendant told the USPTO, among other statements, that plaintiffs had a "CONFLICT OF INTEREST IN NOT REPRESENTING ME, TWICE ON DIFFERENT OCCASIONS DESPITE PAYING FOR LEGAL SERVICES. BUT FROM DUNLAP BENNETT & LUDWIG C/O MARY WITZEL AND ATTORNEYS ATTACHED TO MY TRADEMARK I'M LOOKING AT THE EEOC MAX FOR THE HARDSHIP I'M IN AS WE SPEAK." *Id*. at ¶ 28. In a subsequent email sent on October 6, 2019 to five USPTO email addresses, defendant stated that "THE HORRIBLE FLASH BACKS FROM MY PTSD FROM YOUR NEGLIGENCE. PREMEDITATED NEGLIGENCE WHICH COULD END IN ATTEMPTED MURDER WITH MY SUICIDE ATTEMPTS N [sic] THIS YEAR ALONE BECAUSE OF MARY WITZEL CARELESS ACTION AND YOUR FIRM[.]" *Id*. at ¶ 29.

On October 25, 2019, Arevalo sent Instagram messages and Twitter posts accusing plaintiff Witzel of "psychological rape." *Id.* at ¶¶ 30-31. On October 27, Arevalo further appears to have filed an Americans With Disabilities Act complaint against plaintiffs and forwarded a filing confirmation to multiple email addresses at the USPTO and to the Department of Justice. *Id*. at ¶ 33.

Arevalo's multiple emails and online posts and messages frequently mention Witzel by name. In one notable set of direct messages to DBL's Instagram account, Arevalo states: "I'll be awaiting a response since the fact of your lawfirm [sic] doesn't represent genesco [sic] corporate is shady but it's premediated on your lawfirm [sic] not me. Check mate bitch!!" Arevalo's next message states: "I have to live with being done wrong by a female once again." *Id*. at ¶ 35. In a similar vein, Arevalo wrote that "[it]'s only a day and 15 hour's [sic] to drive" to Virginia in a post regarding his trademark and tagged with the hashtags "#check #mate." *Id*. at ¶ 36. On

November 4, 2019, Arevalo made a public post on his Instagram account in which he alleged "breach of contract from your rapist Mary Witzel and your firm . . . #ha bitches I told you don't f[***] with me and you raped me." *Id.* at ¶ 37. Subsequent posts accused Witzel of rape, theft, and practicing law without a license. *Id.* at ¶ 40.

Defendant's allegations against plaintiffs are false. Plaintiffs' relationship with defendant was always professional. There is no support for Arevalo's claims of breach of contract, negligence, favoritism, murder, intent to induce suicide, theft, and rape.

### III. Jurisdiction and Venue

The Court has diversity jurisdiction over plaintiffs' state-law claim because the amount in controversy exceeds $75,000, all plaintiffs are citizens of Virginia, and defendant is a resident of California. *Id.* at ¶ 9. VA Code §8.01-328.1(A)(3), provides this Court personal jurisdiction over plaintiffs and defendant. In relevant part, it states, "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . causing tortious injury by an act or omission in this Commonwealth." Venue also is proper because a substantial part of the events giving rise to the claims set forth in the plaintiffs' complaint occurred in the Eastern District of Virginia. *Id.* at ¶ 10.

### IV. Standard

Default judgment is appropriate if the well-pleaded allegations of the complaint establish that the plaintiffs are entitled to relief, and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). By defaulting, the defendant admits the plaintiffs' well-pleaded allegations of fact, which then provide the basis for judgment. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l*

*Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)). Here, because defendant has not answered or otherwise timely responded, the well-pleaded allegations of fact in the complaint are deemed to be admitted.

V. **Analysis**

Based on the complaint, the motion for default judgment, and the memorandum in support, the undersigned magistrate judge makes the following findings.

    a. **Plaintiffs' Cause of Action for Defamation *Per Se***

The undersigned recommends that defendant be found liable for defamation *per se* against each plaintiff individually and collectively. Under Virginia law, "[d]efamation is the (1) publication of (2) an actionable statement of (3) the requisite intent. To be actionable, the statement must be both false and defamatory." *Tharpe v. Saunders, 737* S.E.2d, 892 (Va. 2013) (cit. omit'd). "A [company] may be defamed *per se* by statements 'which cast aspersions on its…credit, efficiency or its prestige or standing in its field of business.'" *Dangerfield v WAVY Broadcasting, LLC*. 228 F. Supp. 3d 696, 704 (E.D. Va. 2017). Statements are actionable as defamation *per se* if the statements: (1) "impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished;" (2) "impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society;" (3) "impute to a person unfitness to

perform the duties of an office or employment of profit, or want of integrity in the discharge of duties of such an office or employment;" and (4) "prejudice such person in his or her profession or trade." *Hatfill v. New York Times Co.*, 416 F.3d 320, 330-31 (4th Cir. 2005) (quoting *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1 (1954)).

Here, each of the elements of defamation are met. First, plaintiffs have provided direct evidence in the form of screenshots that defendant published these statements in numerous online venues. Second, these statements are actionable, because they are both false and defamatory. Arevalo made false and defamatory written statements about plaintiffs that directly accused them of unfitness to perform the duties of their employment as attorneys, and placed prejudice upon them in their profession. Finally, defendant published these statements knowing they were demonstrably false.

In addition, the statements made by defendant amount to defamation *per se*. First, the statements made by defendant do involve accusations of the commission of crimes of moral turpitude. Among other accusations, defendant accused plaintiffs of murder, intent to induce suicide, theft, and rape. Defendant's statements also prejudiced plaintiffs in their profession. As noted above, defendant's statements casted numerous aspersions on plaintiffs' honesty, efficiency, and standing in the legal field. *Id*. at ¶ 54. In particular, defendant's accusation that plaintiff Witzel practiced law without a license is, even taken in isolation, defamation *per se*. "[B]ecause an attorney is required to adhere to the disciplinary rules, charging an attorney with unethical conduct is defamatory *per se*." *Fleming v. Moore,* 221 Va. 884, 890 (1981). Plaintiffs persuasively plead that they have been forced to expend time and effort to address these defamatory statements on an ongoing basis and face the constant threat that one of defendant's false statements will be taken to be true and damage their legal reputation. (Dkt. No. 1) at ¶55.

7

### b. Plaintiffs' allegations of stalking

The undersigned further recommends that defendant be found liable for stalking plaintiff Witzel. Under Virginia law, a victim of stalking has a civil cause of action against the individual who engaged in stalking, defined as "conduct direct at another person with the intent to place, or when he knows or reasonably should know that the conduct places that other person in reasonable fear of death, criminal sexual assault, or bodily injury to that other person or to that other person's family or household member." VA Code § 18.2-60.3. Defendant's statements regarding plaintiff Witzel are disturbing and concerning. They include allegations that Witzel had committed acts of rape and theft and outlined the time in which defendant could travel to the Northern Virginia area (Dkt. No. 1) at ¶ 62. Defendant also sent direct messages to plaintiffs on the social media platform Instagram concerning his blood donation efforts, with accompanying photographs. *Id.* at ¶ 37. As attested in her affidavit, these statements caused plaintiff Witzel to reasonably fear for her safety and file police reports as a preventative measure. (Dkt. No. 1) at ¶64. Based on this course of conduct, the undersigned recommends that the Court find that defendant has violated VA Code §18.2-60.3.

### c. Relief Sought

Plaintiffs ask for relief in the form of damages in the amount of $75,000, costs and attorneys' fees, and injunctive relief prohibiting defendant or his agents from further disseminating false and defamatory statements. The undersigned recommends granting plaintiffs' request for injunctive relief and awarding plaintiffs nominal damages of $1.00 for defamation per se and $1.00 for stalking.

For a court to grant a permanent injunction, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In Virginia, where permanent injunctive relief is sought, the plaintiff "has the burden to demonstrate irreparable harm and the lack of an adequate remedy at law.'" *Black & White Cars, Inc. v. Groome Transp., Inc.*, 247 Va. 426, 431 (1994).

Here, plaintiffs have adequately pled all four of these elements. First, plaintiffs have demonstrated irreparable harm. As stated in plaintiff Witzel's affidavit, "I have consistently had to explain the inaccuracies of Arevalo's posts, reviews, and emails to colleagues within the firm and within the legal field who have encountered these posts, reviews, and emails. It is very possible there are other professionals in the legal field and many clients and potential clients who similarly have encountered these posts and reviews and take them as true." (Dkt. No. 10-1) 2. Second, there are no remedies at law adequate to compensate for that injury, other than preventing defendant from continuing such conduct. The complaint and affidavits demonstrate that defendant's defamatory conduct has been incessant, and as stated during oral argument, plaintiffs have had little success in having defendant's public statements removed from websites without a court order. (Oral Argument at 10:03). Third, considering the balance of hardships between the plaintiff and defendant, a permanent injunction is justified. As stated in plaintiff Sun's affidavit, defendant's publicly visible posts "could discourage potential clients from contacting me, cause my peers to question my professional reputation, and create issues with current clients." (Dkt. No. 10-2) 2. And, fourth, such permanent injunction would not disserve the public interest. Here, there is no "public interest to protect" by defendant's disjointed and threatening statements. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006).

On the issue of damages, the undersigned recommends nominal damages of $1.00 for each count of the complaint, totaling $2.00. In a defamation *per se* action, "it is not necessary to show actual out of pocket damage… a showing of loss of reputation and standing in the community, embarrassment, humiliation, and mental suffering will be sufficient for the award of damages." *Sateren v. Montgomery Ward & Co.*, 234 Va. 303, 305 (1987). *Per se* defamation can give rise to substantial damage awards. *Schnupp v. Smith*, 249 Va. 353, 365(1995) (Finding jury's award of $200,000 in compensatory damages and $100,000 in punitive damages not to be excessive). However, while Virginia law presumes actual damages under a claim for defamation *per se,* a plaintiff must establish that the defendant made the statements with "actual malice" before punitive damages can be recovered. *Swengler v. ITT Corp. Electro-Optical Prod. Div.*, 993 F.2d 1063, 1072 (4th Cir. 1993). Moreover, in cases where "plaintiff experienced no physical manifestation of any emotional distress… sought no medical attention for any condition resulting from the libel, and that there was no evidence that the plaintiff's standing with peers was diminished as a result of the libel", a substantial award may not be justified. *The Gazette, Inc. v. Harris,* 229 Va. 1, 325 S.E.2d 713. Absence of actual evidence may be considered to diminish damages. *Fleming v. Moore*, 221 Va. 884, 889 (1981). Here, given the lack of argument by plaintiffs justifying any particular monetary award, such a diminution would be appropriate.[2] Juries in other *per se* defamation cases have awarded nominal damage awards. *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 172 (2d Cir. 2000) (Upholding award including $1.00

---

[2] During oral argument, plaintiffs stated that their main concern in filing this suit was obtaining injunctive relief. (Oral Argument at 10:02). "Frankly I'm not coming seeking our attorneys' fees or even the costs associated with this lawsuit, but really just the injunctive relief." (Oral Argument at 10:04). This focus is reflected in plaintiffs' pleadings, which provide significant detail on their request for injunctive relief, but no support for their request for monetary damages, or any articulation of the costs and attorneys' fees incurred in this matter.

in nominal damages). Accordingly, the undersigned recommends an award of $1.00 in nominal damages for stalking, and $1.00 for defamation.

## VI.     Recommendation

For the reasons stated above, the undersigned recommends that a default judgment be entered in favor of the plaintiffs, that plaintiffs be awarded $2.00 in nominal monetary damages, and that injunctive relief be granted prohibiting Arevalo or his agents from further disseminating false and defamatory statements as set forth in the complaint.

## VII.    Notice

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendant at his address for service of process, the parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

April 24, 2020
Alexandria, Virginia